In the Matter of the Application of HARRY GREENBERG, Petitioner, against S. HOWARD COHEN and Others, as Commissioners of Elections, etc., Respondents, and CARAYIANES APOSTOLOS and Others, Defendants.

Supreme Court, Special Term, New York County, February 23, 1940.

*Eli Kriger*, for the petitioner.

*William C. Chanler, Corporation Counsel* [*Russell Lord Tarbox* of counsel], for the respondents.

*P. Wolf Wiener*, for the defendant Apostolos.

*Allen Goodwin*, for certain defendants.

*Herman Rosenfeld*, for certain defendants.

*Hyman N. Glickstein*, for the intervenor Connelly and the defendants Lombardi and others.

*Albert D. Barsay*, for the defendant Kay Reynolds.

BERNSTEIN, J.  The petitioner has brought this proceeding under section 332 of the Election Law to cancel the enrollments of the ninety-nine defendants as members of the American Labor Party. He has brought it (a) under subdivision 1 of that section in his capacity as an enrolled voter of the party, and (b) under subdivision 2 of that section in his capacity as chairman of the New York county committee of that party.  The basis of the application under subdivision 1 is that each of the defendants had, upon his enrollment, made the false declaration that he was in general sympathy with the principles of the American Labor Party and intended to support its nominees for office.  The basis of the applications under subdivision 2 is that the defendants had been adjudged by the petitioner, as chairman of the county committee, or by a subcommittee appointed by him, as not in sympathy with the principles of the party, and that such adjudication was a just one.  In each instance the gravamen of the indictment laid against the defendants is that, some time between July 31, 1939, and October 10, 1939, each of them signed a nominating petition for the office of councilman of the city of New York to be voted for at the general

election of November, 1939, on behalf of one Israel Amter, as a candidate of the Communist Party. This indictment is reinforced by specific instances of several of the defendants having not only signed but circulated such nominating petition by the claim that some of the defendants had been members of the Communist Party away back in 1935 and 1936, that others had supported Amter as the Communist Party nominee for Governor in 1938, and that still others had supported Earl Browder as the Communist Party nominee for Representative in Congress at a special election in 1940.

While some of the defendants who submitted affidavits on the application have denied most of the specific charges and particularly that they are sympathetic to the philosophy of communism or the principles of the Communist Party, and while others of them have offered a variety of excuses for their conduct, all of the defendants who have appeared have asked for a dismissal of the proceeding upon legal grounds. The court will first address itself to that plea.

There is a clear distinction between this application to cancel enrollments and an application, under section 16 of the Election Law, to remove a member of a party committee for disloyalty. That distinction has been lost sight of in this proceeding as a result of the charge of the defendants, and the frank admission of the petitioner that the application is a prelude to an ulterior plan which has for its purpose the removal of these defendants, all of whom are members of the new county committee, from membership on such committee and the right to vote upon the organization thereof at the meeting set for February 29, 1940.

Because the cancellation of the enrollments is fraught with the danger of removal of these defendants from membership in the county committee and of consequent disaster to the fortunes of the opposing factions upon the organization of the committee at its forthcoming meeting, much of the argument of the parties has centered on the question of removal rather than on that of the cancellation of enrollments. On that question of removal there is sound logic in the contention of the petitioner that many of the defendants are impregnated with an alien philosophy of government which is abhorrent to the principles and program of the American Labor Party, and that their purpose of membership on the committee is to gain control of the machinery of that party for the benefit of a group which has been repudiated by the electors of the State and has lost its own standing as a party. Under the Election Law, however, those are matters which may be dealt with effectively by the committee itself. (Election Law, § 16.)

In passing upon the legal sufficiency or the merit of the application here the court will consider it only in the light of the statute under which it has been made.

The petitioner is concededly a duly enrolled voter of his party and qualified to make the application under subdivision 1 of section 332. Has he, however, set up facts which bring it within the scope of that subdivision? Do either his allegations or his proofs establish that the defendants made a false statement in the declarations upon which they were enrolled in October, 1939? The statute called for a declaration that *they were then in general sympathy with the principles of the American Labor Party and intended to support its State or national nominees at the next State or national election,* in the fall of 1940. (Election Law, § 172.) Proof that they supported a candidate of the Communist Party for a purely local office at an election which was neither a State nor national election, does not establish such falsity. Neither does it impugn their general sympathy with the principles of the American Labor Party. As a matter of fact, the choice of members of the council, under the system of proportional representation, is expressly exempted from the obligation of party regularity by a provision of the New York City Charter (§ 1004-e). It may be recalled, too, that the Amter nominating petition was signed prior to registration week of 1939, and that these defendants made their declarations during such registration week, October ninth to fourteenth. A statement of sympathy with the principles of the American Labor Party and of an intention to support its State or national nominees, made *at that time,* is not necessarily inconsistent with a pledge of support of an independent nominee at a municipal election, given *before that time.*

While the basis of the charge against these ninety-nine defendants is that they signed the Amter petition in 1939, many of them have been singled out for attack on additional specifications to bolster the charge of disloyalty. The fact that thirteen of them actually circulated the Amter petition does not sustain the charge, for "The statute does not prohibit any one from attempting to procure the nomination of any qualified voter in the primary of any or all parties, whatever the motive may be in so doing." (*Matter of Newkirk,* 144 Misc. 765, 771.) The facts that seventeen of them had been enrolled members of the Communist Party in 1935 and 1936 and that a number of them had signed a petition nominating Amter as the Communist candidate for Governor in 1938 do not sustain the charge, for "No inquiry as to past political conduct is permitted or promise as to future support of local candidates required." (*People ex rel. Coffey* v. *Democratic General Committee,* 164 N. Y. 335, 341.)

Presumably uncertain of his right to relief from the court under subdivision 1 of section 332 of the Election Law, the petitioner, claiming to be chairman of his county committee, has also invoked judicial aid under subdivision 2 of that section. As a preliminary step to such aid, complaints were filed against these ninety-nine incorrigibles, charging them (1) with having made the false declarations already described when they enrolled, and (2) with being in sympathy with the Communist Party, whose tenets and doctrines are hostile to those of the American Labor Party; a subcommittee of five was appointed by the petitioner, in his capacity of chairman, to investigate and report on the charges; due notice of a hearing upon these charges was given to the defendants by mail; none of them appeared on the hearing because they refused to recognize the authority of petitioner, as chairman, or of the members of the subcommittee, as his appointees; the subcommittee found them guilty and recommended the initiation of this proceeding; and the petitioner approved these findings and instituted this proceeding under subdivision 2. *All of those steps were taken between December 28, 1939, and January 13, 1940.* Except in the particular hereinafter pointed out, all these steps were regular and in accord with the practice prescribed by the statute.

The petitioner, however, is not the duly elected chairman of the New York county committee of the American Labor Party chosen at the primary election of September 19, 1939. That committee failed to organize when it convened for that purpose on October 6, 1939. As a result of legal proceedings which grew out of such failure the court directed the committee to reconvene on February 29, 1940, to effect an organization, adopt rules and elect a chairman and other officers, pursuant to section 15 of the Election Law (*Matter of Connolly* v. *Cohen*, 173 Misc. 288; affd., 258 App. Div. 944; Id. 945.) In connection with another legal proceeding this court said that the officers chosen at the organization meeting of the county committee held in October, 1938, " continued to function as *de facto* officers, with the powers and duties prescribed by such rules [of the County Committee of 1938], but *with none others.*" (*Matter of Simpson* v. *Cohen*, 173 Misc. 372; affd., 258 App. Div. 1039.) That statement is peculiarly applicable to the situation presented here.

The petitioner has, since the election of the county committee on September 19, 1939, continued to function as *de facto* chairman and will continue to so function under the rules until a new chairman of that committee has been elected. As such he is vested with the powers conferred upon him by the rules and no more. (*Theofel* v. *Butler*, 134 Misc. 259, 263.) The power to appoint a subcom-

mittee to hear complaints against enrolled voters and to proceed to cancel their enrollments is not one conferred by the rules of a party but by the law of the State. (Election Law, § 332.) The right of enrollment and of participation in party primaries and in the selection of party nominees is a precious right of which one may not be deprived arbitrarily or without reason. In fact, the very statute under which the petitioner is moving expressly and in clear language safeguards that right against the laying on it of violent hands when it says: " The Supreme Court or a justice thereof * * * shall direct the enrollment of such voter to be cancelled *if it appears from the proceedings before such chairman or subcommittee, and other proofs if any be presented, that such determination is just."* (Italics supplied.)

From the proceedings had and the other proofs submitted it does not appear to this court that the petitioner and his subcommittee had jurisdiction of the defendants in the matter of the alleged complaints against them, or, even if they had such jurisdiction, that their determination was just. The application is, accordingly, denied and the proceeding is dismissed.