In the Matter of Morris Zuckman et al., Petitioners, against Thomas F. Donohue et al., Constituting the Board of Elections of Albany County, et al., Respondents.

Supreme Court, Special Term, Albany County, April 2, 1943.

*Sidney Fox* for petitioners.

*Walter L. Collins, County Attorney,* for Thomas F. Donohue and others, constituting the Board of Elections of Albany County, respondents.

*Daniel H. Prior* and *M. James Conboy* for John J. Kiley and others, respondents.

BOOKSTEIN, J. The total number of persons who enrolled in the American Labor Party in Albany County in 1947 is 1,443. This is an all time high for that party. The petitioners raise no question as to the *bona fides* of only 94. Out of said total they seek to have cancelled the enrollments of the balance, to wit, 1,349.

The proceeding is based on the proposition that the remaining 1,349 are not in sympathy with the American Labor Party; that all of them acted in concert to seize the machinery of the American Labor Party in Albany County for the benefit of the Democratic Party.

Section 332 of the Election Law, among other things, provides as follows: " 2. The chairman of the county committee of a party with which a voter is enrolled in such county, may, upon a written complaint by an enrolled member of such party in such county and after a hearing held by him or by a sub-committee appointed by him upon at least two days' notice to the voter, personally or by mail, determine that the voter is not in sympathy with the principles of such party. The supreme court or a justice thereof within the judicial district, in a proceeding instituted by a duly enrolled voter of the party at least ten days before a primary election, shall direct the enrollment of such voter to be cancelled if it appears from the proceedings before such chairman or sub-committee, and other proofs if any be presented, that such determination is just."

Pursuant to that provision of law, an enrolled voter of the American Labor Party, the petitioner, Mary Rappaport, on or about March 12, 1948, made a written complaint to the chairman of the Albany County committee of the American Labor Party, the petitioner, Morris Zuckman, that the 1,349 enrollees heretofore referred to are not in sympathy with the principles of that party.

Such chairman on or about March 15, 1948, mailed to each of said 1,349, a copy of the complaint and mailed to each a notice of a hearing thereon to be held at Odd Fellows Temple, Albany, New York, on March 18, 1948.

Of the 1,349 to whom the notice of hearing was sent only 579 appeared. Six hundred and seventy failed to appear and their default was noted.

The 579 who appeared were all represented by two attorneys. Those from the city of Cohoes were represented by one attorney. The balance, representing the vast majority, were represented by another attorney, whose services appear to have been engaged, for the benefit of all, by one John J. Kiley.

A hearing was had. Apparently, it was very informal. In the main it consisted of a questionnaire submitted to each of the 579 who appeared, to fill out and sign. It was also designed so as to be sworn to. All but one of the 579 refused to swear to the truth of the answers given by them on the questionnaire, on the advice of counsel. If the hearing lacked the desirable formality and completeness, such lack was, at the very least, acquiesced in by counsel for all who appeared, and they can not now be heard to complain of the procedure followed. Moreover, it is a serious question as to whether or not, the parties complained of had the right to refuse to submit to the taking of an oath as to the truth of the answers to the inquiries put to them in the questionnaire.

Be that as it may, after such hearing, the county chairman made a decision in writing to the effect that the charges made against all those who appeared as well as all those who defaulted, i.e., against all of the 1,349, were sustained.

The question presented to this court is whether on the record before the county chairman, and the additional proofs presented before me, the determination of the county chairman was just.

On the return of the order to show cause in the proceeding taken before me, under sections 332 and 335 of the Election Law, out of the 1,349 proceeded against, 384 failed to appear either in person or by counsel, and accordingly I ordered that their enrollments be cancelled.

This leaves a balance of 965 to be considered.

Of these 61 are from the city of Cohoes and are represented by the same counsel who appeared for the Cohoes residents involved, before the county chairman, and 904 are practically all from the city of Albany and are represented by the same counsel who appeared for the vast majority of those who attended the hearing before the county chairman.

Out of this total of 965, a comparative handful appeared before me in person. Of this 965, it is interesting and important to note that 638 enrolled in the American Labor Party for the first time, in October, 1947, and out of these 638, 543 were formerly enrolled in the Democratic Party and 95 either did not register or enroll at all in 1947. Of the remaining 327, most were enrolled in the American Labor Party for the first time in 1946 and a scattered few had a history of enrollment in the American Labor Party, prior to 1946, but the vast majority has a prior history of fairly consistent enrollment in the Democratic Party. A mere handful had any prior history of Republican enrollment and, in those few cases, such enrollments occurred in the distant past.

On the record before the county chairman and on the additional proofs presented before me, was the determination of the county chairman just?

An examination of the 579 questionnaires indicates, with rare exceptions, a uniformity of answers, which on their face, would indicate that the persons who signed them are in sympathy with the American Labor Party. The questionnaire was so designed as to make it a simple matter for the signer to demonstrate an apparent sympathy for the American Labor Party. It sets forth a series of what it asserts are important principles of the American Labor Party and asks the person to whom it is submitted to place an X mark in the respective boxes under the headings " Yes " and " No " opposite each so-called principle, to indicate such person's agreement or disagreement with such principles.

The unanimity of agreement with the principles set forth is startling. It is entirely unlikely that so large a group could be in such uniform agreement on so many so-called principles, which are the subject of so much sharp contention in our Nation today.

It would strain credulity to the breaking point to believe that so large a group is so unanimous in their views on such contentious subjects as are contained in the questionnaire.

Parenthetically, of the 579 questionnaires thus answered, over 100 were signed by employees of various departments of the City and County of Albany. Included among them were a substantial number of members of the police department, fire department, public works and other departments of the Government of the city of Albany, Albany County Court House employees in various departments, a deputy sheriff and a court attendant.

It is of course true that these individuals have the legal right to vote as they see fit; or to become members of the political party of their choice. Nevertheless, one must be realistic. Realism precludes the possibility that this group, all at one time, joined the American Labor Party, by reason of a sudden loss of affection for the Democratic Party.

In the very recent past, a situation very analogous to the situation here involved, arose in Kings County. There, in the Twenty-fourth Assembly District, persons who were formerly members of the American Labor Party, enrolled in the Democratic Party. The Democratic county chairman there instituted a proceeding similar to this. The matter came before Mr. Justice Powers, who granted the application to cancel the Democratic enrollments of certain persons, who had theretofore enrolled in the American Labor Party. He found that their purpose was to evade the spirit of the Wilson-Pakula Law (Election Law, § 136-a; L. 1947, ch. 432), and enable these members of the American Labor Party, in the guise of being Democrats, to seize the Democratic Party machinery, and thereby secure the Democratic nomination for member of the Assembly, for the present American Labor Party Assemblyman.

The opinion of Mr. Justice Powers (*Matter of Werbel* v. *Gernstein,* 191 Misc. 275) decided March 23, 1948, so fully and aptly meets the situation here presented that I shall take the liberty of quoting from it extensively.

Justice Powers said (p. 278):

"Examination may not be made into the hearts and minds of people to ascertain their thoughts and sympathies. Deceit often indicates that words do not truly disclose true thoughts and sentiments. But actions often belie words. In this case, it is more the actions of the respondents rather than their words which indicate their true political sympathies.

"The respondents are free to exercise all of their franchise rights but where they do so with respect to a political party they must exercise such rights within the political party where by words or deeds they have indicated they are in sympathy."

Let us consider for a moment the situation with reference to the respondents from the city of Cohoes.

For the primary election to be held on April 6, 1948, petitions designating persons for membership in the Albany county committee of the American Labor Party, were printed. By whom, or at whose expense does not appear. The designating petitions have been circulated and filed, nominating certain of the respondents, who enrolled in the American Labor Party for the first time in October, 1947, for membership in the American Labor Party county committee.

An examination of the petitions in question and other records in evidence reveals some strange coincidences. All of the petitions were circulated or witnessed by eighteen people. Of these, one is an enrolled member of the American Labor Party. The other seventeen are enrolled Democrats and of these seventeen, twelve are members of the Democratic county committee of Albany County and one is the County Treasurer of Albany County.

One would have to be naïve indeed to believe that the enrollees of the American Labor Party who signed the designating petitions in question at the behest of, or in the presence of, these Democratic representatives, did not know them as such and did not know that in signing for them, they were serving the Democratic Party and not the American Labor Party; or that they believed that these Democratic petition circulators or witnesses were so solicitous for the welfare of the American Labor Party, that they circulated or witnessed such petitions on behalf of that party.

The conclusion is inevitable that the signatories of the petitions as well as the circulators thereof or witnesses thereto were serving the Democratic Party and not the American Labor Party.

The vast majority of those signatories enrolled in 1947. Most of those who enrolled in 1946 participated in the 1947 primary election. At that election, the American Labor Party ballot had printed on them the names of the duly designated candidates of that party for the various offices to be filled at the election that fall. Almost without exception, the respondents, who were eligible, failed to vote for the designated candidates of the American Labor Party and instead wrote in the names of all of the duly designated candidates of the Democratic Party for the respective offices. Strangely enough, too, in virtually every instance the names as written in were correctly spelled and

even the middle initial of each candidate provided. Such accuracy in using the precise name of each candidate and placing it on the ballot for the precise office for which such person was a candidate, by such a large number of people in widely scattered election districts is truly remarkable.

The only sensible and plausible explanation is that such persons were furnished with lists, containing the names and titles of the offices and given adequate instructions.

Obviously, too, this was not done by or on behalf of the American Labor Party but only by and on behalf of the Democratic Party.

In the city of Albany, the spearhead of the obviously concerted movement was the respondent John J. Kiley. His activity in the matter shows up constantly. He was the person who furnished the printed designating petitions for the 1948 primary to the various circulators thereof or witnesses thereto. He was active at the hearing of March 18, 1948, in corralling those who attended, into a group to be represented by counsel whom he retained. He circularized by mail the enrollees of the American Labor Party, after the mailing of the order to show cause herein, asking them to turn the papers over to him so that he could turn them over to counsel retained by him so that such counsel should represent them.

All previous history of enrollments by him in the county of Albany is in the Democratic Party until the fall of 1946 when he enrolled for the first time in the American Labor Party.

So far as the record discloses, his first activity in the American Labor Party was the circulation of a petition in 1947 for Michael J. Powers, the Democratic designee for supervisor of the Thirteenth Ward of the city of Albany, to make him the American Labor Party nominee for that office. When this petition was rejected, because it violated the provisions of the Wilson-Pakula law, he saw to it that Powers was written in as the American Labor Party candidate on primary day. At the same primary election, he failed to vote for the regular designees of the American Labor Party and instead wrote in the names of all of the duly designated Democratic candidates for all offices to be filled at the general election.

Thereafter, in the late fall of 1947 and early part of 1948, Kiley conducted meetings at the De Witt Clinton Hotel, at which plans were laid and frankly avowed to take steps to seize the machinery of the American Labor Party from its present management. The ostensible reason was its alleged left wing tendencies which he claimed to be objectionable.

Assuming that the American Labor Party and its management were left wing or, as one of the witnesses characterized it, " red ", that was an internal matter for the bona fide members of that party. If that objection existed, it existed long before 1946 and however objectionable it may have been to Kiley, as a Democrat, it was plainly none of his business. If objectionable to him, he could decrease their strength and power, whatever it was, by improving the attractiveness of his party and increasing its strength.

Because, for some reason or another, he is not in sympathy with the principles or the leadership of any party not his own, the law does not confer upon him the right, in the vernacular, " to butt in " and interfere in the internal affairs of such party or parties.

It is true that an American citizen on election day can vote as he sees fit, regardless of whether or not or how he is enrolled as a member of any particular political party.

This truism has led to the conception or notion that a person has a right to enroll in any party which he sees fit.

Such conception or notion is a mistaken one. There are limitations on the right to enroll which do not exist with reference to voting at a general election.

As was so well stated by Mr. Justice POWERS in *Matter of Werbel* v. *Gernstein* (*supra,* p. 277), affirmed by the Appellate Division, Second Department, March 29, 1948 (273 App. Div. 917): " A condition of membership in a political party is the sympathy with its principles and the purpose of fostering and effectuating them."

In order to enroll in a particular party, the law requires one to mark a ballot for that party and sign his name to a declaration that he is in sympathy with the principles of that party and intends to vote for its national and State candidates.

One cannot make such a declaration falsely; and if one does, the law provides the remedy of canceling the enrollment of such person.

It provides for cancellation of an enrollment, when the person is demonstrated not to be in sympathy with the principles of a party in which he enrolled.

Political parties are voluntary associations of persons, who are in substantial accord on certain principles and policies. Through the medium of political parties, the persons who voluntarily join them, because of their common beliefs, advocate the adoption of their beliefs or principles by the general public by their votes on election day. No one is compelled to join any

political party. Action in joining a political party is entirely voluntary. If one believes in the principles of a party he joins it, if he wishes to. If one does not believe in a party, obviously the correct thing is to refrain from joining it.

Kiley's enrollment in the American Labor Party is not because he is in sympathy with it or its duly constituted officials but rather because he is out of sympathy with them.

However objectionable the principles or policies or management of a particular party may be to one who is not a member thereof, so long as its actions are lawful, it is entitled to function, free from unwarranted interference with or intrusion into its affairs. It is entitled to the equal protection of the laws.

If its management is objectionable, that is an internal matter for the party members to dispose of; if its principles and practices are objectionable, we can trust to the good sense of the American voter to take care of such matters in an orderly fashion at the ballot box on election day.

As Justice POWERS so well said in *Matter of Werbel* v. *Gernstein* (191 Misc. 275, 276, *supra*): " Through rugged strength, sincerity and honesty of purpose, this Nation grew and prospered under the aegis of one or the other of the two major political parties. From time to time minor political parties arose only to fade and pass out of existence."

It is not in accord with our finest traditions to permit destruction of a minor political party by sheer force. If such a party is to be destroyed, let it be destroyed in the crucible of enlightened public opinion. It has happened in the past; it will happen in the future.

Constitutional guarantees and the spirit of Voltaire who declared " I disagree with what you say but will defend to the death your right to say it " should be chastening influences on those who would seek improperly to destroy a minor and small political party, regardless of how emphatically one may disagree with it.

Indeed, in the short duration of its existence, the American Labor Party has already undergone one revolution. When a conflict arose over policies and principles, a large segment of the party, finding itself no longer in sympathy with it, left it en masse and formed the Liberal Party.

That is quite in contrast to what has been attempted here. Here persons belonging to the Democratic Party, on the assertion, real or pretended, that the American Labor Party is left wing or red, enrolled in that party, with which they are patently not in sympathy, in order to seize it and thereby destroy it in a manner not contemplated by law.

As to the recent enrollees in the American Labor Party, in the city of Albany, substantially all of those who enrolled for the first time in 1946, who voted in the 1947 primary election, failed to vote for the regularly designated candidates of the American Labor Party; instead with almost mathematical precision they wrote in the names of the duly designated Democratic candidates for the various offices to be filled at the ensuing general election. The uniformity of the operation cannot in common sense be said to be mere coincidence. Instead, quoting again from the opinion of Justice POWERS (*supra,* pp. 278–279): " Where one seeks to help a candidate of one political party to succeed and to help defeat the candidate of another political party, such person must by common sense be held to be in sympathy with the political party of the candidate whose success is promoted. So, in this case, the respondents must be held in sympathy with the [Democratic] Party."

Recently many of these new enrollees participated in the circulation of petitions naming some of the persons similarly situated to membership in the county committee of the American Labor Party, to be elected at the April, 1948, primary election.

The recent increase in American Labor Party enrollment, in Albany County, percentage-wise is enormous, as the following table will show:

1945 —   604
1946 —   798
1947 — 1,443

The 1947 increase is even larger than the foregoing figures reveal, since a substantial number of the 1946 enrollments were cancelled.

It is likewise larger so far as first-time enrollees are concerned since a substantial number of those who enrolled in 1946, did not enroll in 1947.

In *Matter of Newkirk* (144 Misc. 765) where only twenty-six new enrollees had their enrollments cancelled by the court, Mr. Justice DOWLING, at page 771, said: " It may well be that some over-zealous adherents of the local Democracy had a hand in the matter as nearly all of the defendants were previously enrolled Democrats. *Their conversion to socialism in such numbers at the same time is either miraculous or highly suspicious.*"

How much more truly can that be said, in this case, involving hundreds?

In reaching my conclusion, I have not overlooked the testimony of the twenty-seven respondents who testified before me in this proceeding. Their testimony as well as their demeanor served only to fortify the conclusion reached. The reasons assigned by some for enrolling in the American Labor Party demonstrated that those persons are not in sympathy with that party. The reasons assigned by some others were, to put it mildly, unconvincing and did not reveal the real reason.

To quote again from Justice Powers, or perhaps to paraphrase (pp. 277-8):

" Certainly persons imbued with the principles of the [American Labor] Party would not be actively engaged in an effort having for its ultimate purpose to help a candidate or prospective candidate of the [Democratic] Party. To me the political ideologies of the Democratic and American Labor Parties in Kings County at the present time are so different as to be irreconcilable. In this respect the courts may be presumed to know what everyone else knows and to take judicial notice of matters of common knowledge. I do not see how a person can in honesty embrace both at the same time. To accomplish [their] purpose * * * the respondents could only succeed by capturing unto themselves and their associates the control of the [American Labor] Party * * *.

" The fact that Hyman Gernstein and Dotty Goldsmith enrolled in 1946 as members of the American Labor Party and in 1947 as members of the Democratic Party may have the significance of indicating a change in political loyalties, or, as I believe, to qualify in a participation in a large conspiracy with others, while masquerading as Democrats but in fact being members of the American Labor Party, to capture the organization of the Democratic Party in the Twenty-fourth Assembly District, Kings County, to serve the purpose of assisting candidates of the American Labor Party in general elections.

" The actions of the respondents considered alone may not have a sinister appearance but when considered with the actions of others, the enterprise in which all were engaged and the achievement sought leads to the inevitable conclusion that there existed a common plan and scheme by the members of the American Labor Party to capture and control the local Twenty-fourth Assembly District Democratic Party organization."

So here, but just in reverse, there was a common plan and scheme by members of the Democratic Party to capture and control the American Labor Party organization in Albany County.

The question before the court under the statute is whether, from the evidence before the chairman, together with the additional proofs before the court, the determination of the American Labor Party chairman is just.

This court finds that it is. To find otherwise would be wholly unrealistic. The cumulative evidence permits no other conclusion. Justice requires a determination based upon the facts, upon the substance rather than the form. The conclusion reached is therefore inescapable.

The prayer for relief is granted against all 1,349 respondents, both those who defaulted in appearance and those who appeared in person or by counsel.

Submit order.