In the Matter of Louis A. Mendelsohn, Petitioner, against Bernard G. Walpin et al., Respondents.

Supreme Court, Special Term, Bronx County, August 2, 1950.

*Joseph A. Brust* for petitioner.

*Goldstein & Golenbock* for Bernard G. Walpin, respondent.

*John P. McGrath, Corporation Counsel (Thomas W. A. Crowe* of counsel), for Board of Elections of the City of New York, respondent.

RABIN, J. This is an application under section 332 of the Election Law to obtain a direction canceling the enrollment of the respondent Walpin as a member of the Democratic party. The preliminary requirements of the law have been complied with. The petitioner, an enrolled member of the Democratic party in Bronx County, has filed a complaint alleging that the respondent is not in sympathy with the principles of the Democratic party; a hearing has been had by a subcommittee

appointed by the chairman of the county committee after due notice had been given to the respondent, at which hearing the respondent appeared with counsel and gave testimony; based upon the report of such committee a determination was made by the county chairman that respondent was not in sympathy with the principles of the Democratic party.

This court must determine whether based upon the proceedings before such committee and "other proofs" (Election Law, § 332, subd. 2) which were taken in open court upon the hearing of the application the determination of the chairman is just.

At the outset it may be well to state that a voter may not, without limitation, enroll as a member of any political party in which he chooses to enroll. As Mr. Justice Bookstein said in the case of *Matter of Zuckman* v. *Donohue* (191 Misc. 399, 407): " It is true that an American citizen on election day can vote as he sees fit, regardless of whether or not or how he is enrolled as a member of any particular political party. This truism has led to the conception or notion that a person has a right to enroll in any party which he sees fit. Such conception or notion is a mistaken one. There are limitations on the right to enroll which do not exist with reference to voting at a general election." Quoting Mr. Justice Powers he states further (p. 407): " As was so well stated by Mr. Justice Powers in *Matter of Werbel* v. *Gernstein* \* \* \* ' A condition of membership in a political party is the sympathy with its principles and the purpose of fostering and effectuating them.' "

What the principles of the Democratic party are, while important and material, was not put in issue in this proceeding. It was not necessary for this court to receive in evidence the statement of principles of the Democratic party as stated in the platform adopted by the Democratic National Convention in 1948, or as stated in the enunciation of principles by the Democratic State Committee, because those are matters of public record and the court will take judicial notice of them. Nor was it necessary to indulge in a discussion of the fundamental political philosophy of the Democratic party because the court will assume that the respondent if asked would have said that he is in sympathy with those principles as set forth in the party platform and in its statement. Were he to say to the contrary there would have been no need for taking further testimony.

However we cannot find that one is in sympathy with the principles of a political party merely because he states those principles and affirms that he is in sympathy with them, because as stated by Mr. Justice Powers in *Matter of Werbel* v. *Gern-*

*stein* (191 Misc. 275, 278) : '' Examination may not be made into the hearts and minds of people to ascertain their thoughts and sympathies. Deceit often indicates that words do not truly disclose true thoughts and sentiments. But actions often belie words. In this case, it is more the actions of the respondents rather than their words which indicate their true political sympathies.''

Therefore what this respondent said and did that would point to whether he was or was not in fact in sympathy with the principles of the Democratic party were the questions put in issue by the parties at the hearing in court. Did the evidence at the hearing before the subcommittee and the '' other proofs '' at the hearing in court support the petitioner's contention that the respondent Walpin's words and acts clearly demonstrated that he was not in sympathy with those principles? If they did then it may be found that the determination of the chairman of the county committee was a just one.

The respondent is an attorney and is likewise an instructor teaching at Hunter College. He enrolled as a member of the Democratic party for the first time in 1949. It is this enrollment that is sought to be cancelled by this proceeding. Prior to 1949 he was enrolled as a member of the Liberal party and was its candidate for Assembly in 1948 and likewise in 1946 before it became an official party. He states he became active in Liberal party circles in 1944. The year prior to that, namely in 1943, found him enrolled as a member of the Republican party although he stated that he did not agree with its principles. He remained active in the Liberal party until sometime early in 1949 when he says he came to the conclusion to sever his ties with that party and to become a Democrat although the Liberal party still considered him a member of its executive committee in May of that year. He admits that he did not formally resign from that committee but asserts that he did break with the Liberal party sometime in March of 1949. That assertion was borne out by the evidence. That in and of itself did not entitle him to enroll as a Democrat if in fact he was not in sympathy with the principles of that party. The respondent testified that he was in sympathy with those principles and that he enrolled in the Democratic party because he believed that those principles could not be achieved through the Liberal party, and because he wanted to fight '' machine domination '' of the Democratic party in order that those principles could be achieved through it.

The evidence however does not support the respondent. It shows that he did not enroll for that purpose but that he enrolled for reasons far less lofty than those which he attributes to himself.

At the hearing before the subcommittee Mr. Sidney H. Asch, a lawyer and a teacher at the New York Law School, testified to a conversation had with the respondent " prior to the week of registration in October 1949 " as follows: " We discussed the political situation generally, and then Mr. Walpin told me that he had approached the Bronx executive committee of the Liberal party with a suggestion that he be permitted to enroll as a Democrat and have other people enroll as Democrats.   *   *   *   A. Well, he said that he thought that the Liberal party could successfully take over at least a district, Assembly District, if they engaged in that strategy. Q. Did he tell you what particular Assembly District?   A. I believe the 3d Assembly District. Q. The district in which he resides?   A. That is right. "

This evidence was strongly corroborated by the executive secretary of the Liberal party who testified at the hearing in court. The respondent through his own testimony in court and through the testimony of his attorney vainly attempted to discredit Mr. Asch. Why that attempt should have been made is not understandable because the respondent himself substantially corroborated that testimony. He admitted in open court that in 1947 *he asked the leaders of the Liberal party to permit him to enroll as a Democrat* but that such permission was refused. At the hearing before the subcommittee after stating that his request was "turned down" he testified: "O. K. I was a member of the Party, (Liberal) and that there was the decision, and that was the end of it." But here too he said that he made that request for the purpose of making an " experiment " to see if anything could be done " about the machine." Once again the only conclusion that can be drawn from his own testimony is that he made that request for reasons less noble than those he professes. In answer to questions put to him by the court he stated that it was his intention to enroll as a Democrat if permission were granted by the Liberal party leaders. He admitted that it was his intention to then enter the primaries to try to obtain the Democratic nomination for the Assembly in his district and that he would then *approach the Liberal party to obtain its indorsement.* In the light of that testimony given by himself how can we consider his proposal except as a plain attempt to get the Liberal party leaders to go along with him in a plan to circumvent the Wilson-Pakula law (Election Law, § 137) which

was passed that year. We thus can readily see why the Liberal party leaders "turned down" his proposal. They refused to become parties to such an attempt to circumvent the law.

It was late in 1948 or early in 1949, after his defeat for the Assembly running as a Liberal — his party having refused to let him enroll as a Democrat — that according to his testimony he finally decided to enroll as a member of the Democratic party.

He testified that at the time of his enrollment he had not yet determined to enter the primaries the following year. That decision he said was made by him sometime in 1950. I find to the contrary. It must be stated that there is nothing in the law to prevent one from enrolling as a member of a party with the intention of running in the primaries of that party provided he believes in the principles of the party, but when one does not tell the truth about his intentions, that may be taken into consideration in determining the question as to whether he really is in sympathy with those principles.

Although at first he denied it, yet when confronted with the testimony of one of his own witnesses, he admitted that in 1949 he tried to induce other members of the Liberal party to join the Democratic party with him. That too he would be permitted to do if he were in sympathy with the principles of that party. Those who joined with him would be permitted to enroll if they likewise believed in those principles. However his action in trying to get mass enrollment in the Democratic party of Liberal party members may be taken into consideration in determining the ultimate question to be decided. He was by such action trying to do alone what the Liberal party leaders refused to help him do. It is not necessary to prove that anyone was in conspiracy with him in that attempt (*Matter of Newkirk* v. *Lisandrelli*, 144 Misc. 765–771). The evidence shows that 435 voters who in 1948 had enrolled in the Liberal party, in 1949 enrolled as members of the Democratic party, *all in the 3rd Assembly District,* and that despite the fact that in the year 1949 the Liberal party's enrollment was increased over 1948. It may be noted at this point, however, that this proceeding is not directed against a group of members of the Liberal party, but challenges solely the action of the respondent who it is claimed was not in sympathy with the principles of the Democratic party. As stated by the Appellate Division in *Matter of Zuckman* v. *Donohue* (274 App. Div. 216, 218), " whether or not a particular appellant was out of sympathy with the principles of the American Labor Party is

an individual and not a group matter, and must be considered as such.''

It is significant to note that of the committee on vacancies on the respondent's petition for nomination in 1950, only one of the five was an enrolled Democrat in 1948, whereas two had enrolled as Liberals in 1948, and changed their enrollment in 1949, the fourth having previously enrolled as a Republican, and the fifth not having enrolled at all in 1948.

One may not arrive at the conclusion that the respondent is not in sympathy with the principles of the Democratic party merely because of these acts taken separately, but these acts must be considered in the light of what the respondent said and did at or about the time he enrolled as a Democrat in 1949.

He enrolled on October 15, 1949. At that time the Democratic party had already named its candidates for the coming election. At the time of his enrollment I find that he had not the slightest intention of supporting the candidates of that party, but was in fact then campaigning on behalf of those opposing them. It is urged on his behalf that section 174 of the Election Law gives him that right because this was a municipal election, but his opposition to the Democratic candidates must be considered in the light of and together with his public denunciation of the party from a campaign platform shortly before or shortly after his enrollment. He resented being introduced by the chairman of the meeting as being even an Independent Democrat, and from the platform at that meeting vehemently denied he was such, and then and there repudiated the party. That is most significant and is evidence, when considered with all of the other acts, of his lack of sympathy with the party or its principles. And his several explanations are no better and should be given no more weight than those that he readily gave when confronted with any contradictions found in his own testimony or between his testimony and that of his witnesses.

In an attempt to prove that he was not entirely opposed to the Democratic party and its candidates he testified that he favored the election of its candidate for comptroller and voted for him on Election Day. And yet in the next breath he admitted that on the stump he urged the electorate to vote for the opponent of that Democratic candidate for comptroller. This too he tried to explain away and justify. A clearer case of political hypocrisy on one's own admission is difficult to find.

As stated earlier in this opinion, in determining whether or not respondent is in sympathy with the principles of the Democratic party, we must depend primarily upon his acts and words.

From the evidence before the subcommittee, the additional proof before the court, the attitude of respondent on the stand, the evasions and contradictions in his testimony and particularly his actions and statements both prior to and at the time of his enrollment, the only reasonable conclusion I can reach is that the action of the subcommittee in finding that respondent, in spite of his protestation to the contrary, was not in fact in sympathy with the principles of the Democratic party was just. To hold otherwise would be to ignore the realities and would be repugnant to common sense.

In so holding I do not mean that a voter may not change his party as he sees fit; that he may not enter a party for the sole purpose of seeking nomination and election; that he may not disagree with the party in its choice of candidates; that he may not criticize the party leadership and try to change it; or that he may not even oppose candidates of the party in an election. He may do any or all of these things and still remain a member of the party provided he is in reality in sympathy with its principles. But where, as I think it has been conclusively shown here, a man is not in reality in sympathy with the principles of a party he is not entitled to enroll in order to further his ulterior motives.

I accordingly find on the proceedings before the chairman of the Democratic county committee and the subcommittee and the other proofs presented in court, that the determination of the chairman of the county committee that the respondent Bernard G. Walpin is not in sympathy with the principles of the Democratic party is just and I therefore direct that his enrollment be cancelled.