Antonia **ECHEVARRIA**, Individually, and on behalf of all others similarly situated, Plaintiff,

v.

Hugh **CAREY**, Individually, and as Governor of the State of New York, et al., Defendants.

No. 75 Civ. 1801.

United States District Court,
S. D. New York.

Aug. 29, 1975.

Jack John Olivero, Richard J. Hiller, Herbert Teitelbaum, Puerto Rican Legal Defense and Education Fund, Inc., New York City, Burt Neuborne, New York University School of Law, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants Carey, Schwartz, Acito, Rettaliata and McKeon and pro se pursuant to Executive Law § 71; A. Seth Greenwald, Asst. Atty. Gen., of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants Feuer, Previte, Sachs, Sadowski, Eastman, Sclafani, Kochman, Cassidy, Avarello and Bass; William P. DeWitt, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff challenges the validity of section 186 of New York State's Election Law [1] as applied to her and others of her class. Plaintiff acquired voting residence in New York after the November 1974 general election, thereby entitling her to vote in the oncoming election in November 1975; however, section 186, which requires that voters must have enrolled in a party at least thirty days prior to the last general election in order to vote in the following primary, in effect forecloses her from voting in the primary election to be held on September 9, 1975. The issue—whether section 186 so applied imposes an unconstitutional durational residence requirement—was before the Supreme Court in *Rosario v. Rockefeller* [2] but was not passed upon since the Court found that plaintiff in that action lacked standing to raise it.

The parties agree that upon the facts here presented, the matter is ripe for summary judgment determination. The plaintiff moves for such relief pursuant to Rule 56 and also for a class action certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. [3]

---

1. N.Y.Elec.Law § 186 (McKinney 1964): *"Opening of enrollment box and completion of enrollment*

All enrollment blanks contained in the enrollment box shall remain in such box, and the box shall not be opened nor shall any of the blanks be removed therefrom until the Tuesday following the day of general election in that year. * * * "

2. 410 U.S. 452, 459 n.9, 93 S.Ct. 1245, 36 L. Ed.2d 1 (1973).

3. Plaintiff alleges she represents:

"(a) the class of New York voters who could not have enrolled in the Democratic Party at the time of the November, 1974 general election because they did not meet the residence requirements imposed by New York law and who have since acquired voting residence, but who are, nevertheless, barred from voting in the 1975 Democratic Primary by the operation of Section 186 of New York's Election law, and (b) the class of all recently arrived New York State residents who could not have enrolled timely in

Plaintiff resided in New York City for sixteen years from 1951 through October 1967, during which period she was a registered voter and enrolled as a member of the New York State Democratic Party. In October 1967, she moved to the Commonwealth of Puerto Rico where she remained until January 1975, when she returned to New York City and again took up residence there. On March 4, 1975, she registered to vote [4] and enrolled in the Democratic Party at the central office of the Board of Elections in New York City. She was then informed by a representative of the Board of Elections that she was ineligible to participate in the New York State Democratic primary to be held on September 9, 1975, because she was not an enrolled member of the party as of thirty days prior to the November 1974 general election.

Section 187 of the New York State Election Law contains a special en-rollment provision which permits one who acquired the necessary residential requirements after the last general election to enroll, but subdivision 6 of section 187 restricts such special enrollment "to the same county the voter resided in at the preceding year." [5] While a surface reading of the restriction "to the same county the voter resided in at the preceding year" suggests that it is inapplicable to plaintiff and others of her class, who were not residents of the state at the last preceding general election and who therefore could not have been registered or enrolled in any county of the state, the New York State Court of Appeals has upheld a lower court ruling that subdivision 6 of section 187 also applies to out-of-state residents who arrive here after the cutoff date.[6] This Court, of course, is bound by that ruling.[7]

Thus the Court's inquiry is directed to section 186, which in substance provides

---

the Democratic Party because they do not meet the residency requirements imposed by New York law and who will acquire voting residence, but are barred, nevertheless, from voting in future Democratic primary elections by the operation of Section 186 of New York's Election law."

4. N.Y.Elec.Law § 150 (McKinney Supp.1975) in pertinent part provides:
"A person is a qualified voter in any election district for the purpose of having his or her name placed on the register if he or she is or will be on the day of the election qualified to vote at the election for which such registration is made. A qualified voter is a citizen who is or will be on the day of election eighteen years of age or over, and shall have been a resident of this state, and of the county, city, or village for three months next preceding an election and has been duly registered in the election district of his residence. * * * "

5. N.Y.Elec.Law § 187 (McKinney 1964) provides:
"1. At any time after January first and before the thirtieth day preceding the next fall primary, * * * a voter may enroll with a party, transfer his enrollment after moving within a county, * * * as hereinafter in this section provided.
"2. A voter may enroll with a party if he did not enroll on the day of the annual enrollment * * * (c) because he did not have the necessary residential qualifica-tions * * * to enable him to enroll in the preceding year * * *.
* * * * *
"6. Special enrollment under the classification set forth in clause (c) of subdivision two is hereby expressly limited to a voter otherwise qualified, who did not have the qualifications to vote at the previous general election and such special enrollment is restricted to the same county the voter resided in at the preceding year."

6. *Jordan v. Meisser*, 29 N.Y.2d 661, 324 N.Y.S.2d 954, 274 N.E.2d 444 (1971), *appeal dismissed*, 405 U.S. 907, 92 S.Ct. 947, 30 L.Ed.2d 778 (1972).

7. *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *United States v. Thirty-seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *Commissioner v. Estate of Bosch*, 387 U.S. 456, 464–65, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). It has also been held that the construction placed upon a statute by a state's intermediate appellate court which was left undisturbed—though not specifically passed upon—on appeal to the state's highest court is similarly binding on the federal courts. *Thorington v. Cash*, 494 F.2d 582, 587 (5th Cir. 1974). *Cf. Miami Parts & Spring, Inc. v. Champion Spark Plug Co.*, 364 F.2d 957 (5th Cir. 1966). This is the situation in the instant case.

that, for a registered voter to participate in a party's primary, he must enroll at least 30 days before the general election by depositing his enrollment blank in a locked enrollment box which is not opened until the Tuesday following the general election when his enrollment is entered on the official registration books. Since plaintiff was not a resident of New York State in November 1974, she was not eligible to vote at that election and there was no way for her to register or enroll in any party thirty days before that election as required by section 186. Having met residency requirements after the November 1974 election, she was duly registered and is now entitled to vote at the oncoming general election to be held in November 1975. But, under New York's interpretation of sections 186 and 187, she is barred from voting in the September primary, even though at that time she will have been enrolled as a member of the Democratic Party since March 1975. The earliest primary she will be eligible to vote in is the presidential primary in 1976.

Accordingly, plaintiff seeks a declaration that defendants' refusal, under color of sections 186 and 187, to permit her and members of her class to participate in the September 1975 primary election is an unconstitutional durational residence requirement which abridges their right to participate in the electoral process, impinges upon their right to travel, and denies them equal protection of the laws in violation of the First and Four-

teenth Amendments to the Constitution of the United States and Article IV, section 2 thereof.[8] The issue is confined to plaintiff and other newly established residents of the state who, lacking the necessary residential qualifications, could not have voted at, or enrolled in a party prior to, the last general election, but who thereafter having attained the required residential qualifications are entitled to vote at the next general election, but nonetheless foreclosed from voting in the primary preceding that general election. The net effect of sections 186 and 187 as applied to plaintiff and members of her class is to impose a durational residency requirement of up to eleven months in order to be eligible to vote in the September 1975 primary election.[9]

■■ The right to vote in a primary election is as important as the right to vote in a general election and as such is similarly protected against state action.[10]

As recently stated by the Supreme Court:

> "[t]here can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activities' protected by the First and Fourteenth Amendments. * * * The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom" [11]

and clearly encompasses the right to vote in primary elections.

8. Upon the argument of this motion, plaintiff withdrew her request for an injunction directing the defendants to permit her to participate in the 1975 primary elections, and expressly limited her claim to a declaratory judgment. Under this circumstance, the Court is not called upon to consider convening a three-judge court under 28 U.S.C. § 2281 (1970), but is empowered to determine the constitutional issue. *See Mitchell v. Donovan*, 398 U.S. 427, 90 S.Ct. 1763, 26 L. Ed.2d 378 (1970) ; *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L. Ed.2d 644 (1963) ; *Rosario v. Rockefeller*, 458 F.2d 649, 651 n.2 (2d Cir. 1972), *aff'd*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), and cases cited therein.

9. The plaintiff, in order to have been enrolled as of the November 1974 general election so as to qualify to vote in the ensuing primary, would have had to register and complete her enrollment prior to October 10, 1974, the last day of registration in New York City.

10. *Bullock v. Carter*, 405 U.S. 134, 146–47, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) ; *Terry v. Adams*, 345 U.S. 461, 469–70, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) ; *United States v. Classic*, 313 U.S. 299, 314, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

11. *Kusper v. Pontikes*, 414 U.S. 51, 56–57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973).

It cannot be seriously challenged that the period between the cutoff date for enrollment—at least thirty days prior to a general election and the ensuing primary election in the following year— eleven months in the instance of plaintiff and those of her class, is "lengthy."[12] The practical effect of sections 186 and 187 as applied to plaintiff is to work an absolute bar on plaintiff's right to associate with others who share her political beliefs by foreclosing her from voting at the September 9, 1975 primary. No act or conduct of plaintiff herself has resulted in the deprivation of that right, except the lack of the eleven-month durational residence. Unlike the plaintiff in *Rosario*, plaintiff here did not lose her right to enroll by her own neglect. Upon resumption of her residence in New York some three months after the deadline for enrollment expired, there was no way under New York law that she could have enrolled so as to be eligible to vote in the September 9, 1975 primary. It is the application of section 186 alone that bars her from voting.

■ The initial question is whether section 186 is to be tested by the rational basis standard or by a more stringent standard of review.[13] Since the statute effectively deprives plaintiff of the right to participate in the ensuing primary election and to associate with others for the common advancement of their political views and beliefs, the statute is subject to a rigid standard of review and at a minimum must be "found reasonably necessary to the accomplishment of legitimate state ob-

jectives in order to pass constitutional muster."[14] In other words, is the eleven-month minimum residence requirement that is imposed upon plaintiff as a newly established resident of of the State of New York before she is eligible to voice her preference in her party's primary election "necessary to promote a compelling governmental interest"?[15]

■ The state justifies its law as reasonable in order to assure the integrity of the electoral process, essentially by preventing "raiding" or "crossing over" by members of one political party to another primarily for the purpose of affecting the results in the raided party so as to weaken its candidates at the general election. There can be no question that this is a valid purpose and that the prevention of "raiding" reflects a compelling state interest.[16] However, recognizing that important interest does not resolve the constitutional issue; in the protection of that interest the state "cannot choose means that unnecessarily burden or restrict constitutionally protected activity."[17] Thus, inquiry is directed to whether section 186 is necessary to protect the state's interest insofar as it applies to out-of-staters who establish residency in New York after the cutoff date for enrollment.

The possibility that voters in this group would be exploited to raid political parties absent section 186 is minimal. First, the New York State Court of Appeals, in holding unconstitutional the three months' durational residence requirement (as distinguished from a

12. *Rosario v. Rockefeller*, 410 U.S. 752, 761, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973).

13. *Bullock v. Carter*, 405 U.S. 134, 142–143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

14. Id. at p. 144, 92 S.Ct. at p. 856.

15. *Dunn v. Blumstein*, 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). The formulation of the strict scrutiny test in *Dunn* differs somewhat from that in *Bullock* quoted immediately above in its insistence that the state's interest be a compelling one, and seems to be the most widely accepted view of the standard the Supreme Court has attempted to enunciate. Whether this standard or the standard announced in *Bullock* is the correct one, however, the end result here is the same.

16. *Rosario v. Rockefeller*, 458 F.2d 649, 652 (1972), aff'd, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973).

17. *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972).

bona fide residency requirement) imposed under the state's constitution and section 150 of the Election Law, recognized that a lesser period, not exceeding thirty days, was adequate to protect the state's interest in preventing voter fraud.[18] Thus an adequate investigatory period eliminates the danger that large groups of non-New Yorkers will invade the state just to vote in one of its primary contests. Furthermore, it is unrealistic to assume that many out-of-state persons will undertake the expense and suffer the inconvenience of moving to and establishing residency in New York simply so that they may raid a party's primary election. Finally, it is unlikely that party organizers can build successful raiding campaigns from among those who have recently moved to the state for reasons unrelated to raiding. Such new arrivals, on the whole, will have an interest in local politics somewhat less partisan than those of more established residents. Experience suggests that, to the extent raiding occurs, raiders are more likely to be long time members of the conspiring party,[19] than new arrivals who have yet to establish a political affiliation in New York State. Under the circumstances, any alleged deterrent force of section 186 with respect to plaintiff is illusory and the time factor thereunder which deprives her of the right to vote in the primary is far beyond what is reasonably required to achieve that purpose.

Neither can the eleven-month waiting period be justified on the ground of administrative necessity. In *Dunn v. Blumstein*[20] the Supreme Court observed that thirty days appeared to be ample time to complete whatever administrative tasks are necessary to prevent fraud, and a year or three months too much. In *Burns v. Fortson* the Court in upholding Georgia's statute closing voter registration fifty days prior to election day as necessary "to promote . . . the orderly, accurate, and efficient administration of state and local elections" nonetheless cautioned that "the 50–day registration period approaches the outer constitutional limits in this area."[21]

■ This Court therefore concludes that section 186, as applied to persons who move to New York State after the cutoff date for enrollment, is not necessary to effect the compelling state interest of preventing raiding of primary elections or to promote administrative efficiency. The law operates most harshly against exactly the group of persons who present the least danger of engaging in the conduct that the statute seeks to prevent. Such imprecisely drawn legislation does not pass constitutional muster under · the exacting standards that must be applied to preserve the constitutional rights at issue here. It impermissibly deprives a substantial number of qualified voters from participating in the primary election of their designated party; it penalizes those persons who have traveled from one place to another to establish a new residence; it discriminates against them and in favor of long-time residents of the state by denying them the opportunity to participate in a primary election and to associate with those who share their political views.[22]

18. *Atkin v. Onondaga County Bd. of Elections*, 30 N.Y.2d 401, 334 N.Y.S.2d 377, 285 N.E.2d 687 (1972).

19. *See, e. g., Zuckman v. Donahue*, 191 Misc. 399, 79 N.Y.S.2d 169 (Sup.Ct.), *modified*, 274 App.Div. 216, 80 N.Y.S.2d 698, *aff'd mem.* 298 N.Y. 627, 81 N.E.2d 371 (1948); *Werbel v. Gernstein*, 191 Misc. 275, 78 N.Y. S.2d 440 (Sup.Ct.), *aff'd*, 273 App.Div. 917, 78 N.Y.S.2d 926 (1948).

20. 405 U.S. 330, 348, 92 S.Ct. 995, 31 L.Ed. 2d 274 (1972).

21. 410 U.S. 686, 686–87, 93 S.Ct. 1209, 1210, 35 L.Ed.2d 633 (1973).

22. The state urges that principles of *stare decisis* and collateral estoppel require dismissal of plaintiff's complaint. This contention is without substance. Entirely apart from the fact that plaintiff was not a party to any of the cases upon which the state re-

■ There remains for final consideration plaintiff's motion for class action determination pursuant to Rule 23(b)(2). Certification would appear unnecessary in the light of *Vulcan Society of New York City Fire Department, Inc. v. Civil Service Commission.*[23] However, at a further hearing following original argument of this matter, the state's representative did not give definite assurance that in the event plaintiff's position were upheld and the statute as applied to plaintiff declared unconstitutional, the state would accord to those in the same class as plaintiff the benefits of the declaratory judgment in her favor.

Sections 186 and 187 have been the subject of substantial and time-consuming litigation in the federal and state courts. As already noted, the Supreme Court in *Rosario* did not reach the issue here presented since plaintiffs in that action did not have standing to raise it. The issue is a recurring one and should be definitively set to rest one way or the other. It has been suggested that defendants may attempt to moot plaintiff's claim by the expedient of allowing her to vote in the September primary.[24]

But even so the issue will remain as to others in her class. Those voters similarly situated as plaintiff and newly arrived residents otherwise qualified, who are deprived of the right to vote in this or future primary elections under the same circumstances as plaintiff, are also aggrieved by the statute enforced by the state and now found unconstitutional. The fact that plaintiff prevails upon her claim for declaratory relief does not eliminate the claims of those, similarly situated, on whose behalf plaintiff also commenced this action.

The state opposes class action certification. It is difficult to fathom the basis of its opposition in the light of the time-consuming litigations in both the federal and state courts. In any event, there can be no question that the requirement of a class action as defined in Rule 23(b)(2), to wit, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *," is fully satisfied, as are the other prerequisites under the Rule.

---

lies, each cited case is distinguishable from the facts in the instant case. *Ortner v. Board of Elections*, Dkt. No. 74 Civ. 3416 (S.D.N.Y. Sept. 9, 1974) (unreported), was a decision of a divided three-judge panel issued orally on the day before the 1974 primary elections were held. *Neale v. Hayduk*, 35 N.Y.2d 182, 359 N.Y.S.2d 542, 316 N.E.2d 861 (1974), *appeal dismissed*, 420 U.S. 915, 95 S.Ct. 1109, 43 L.Ed.2d 388 (1975), was a 4–3 decision of the New York Court of Appeals based largely on the proposition that the particular means chosen by the state to implement its compelling interest need only be reasonable. *Hansen v. Board of Inspectors*, Dkt. No. 12410 (Sup.Ct. June 26, 1973), *aff'd*, 45 A.D.2d 988, *appeal dismissed*, 421 U.S. 973, 95 S.Ct. 1971, 44 L.Ed.2d 464 (1975), was a summary dismissal of an election-day challenge brought before a State Supreme Court justice which contained no discussion of the merits of plaintiff's claim.

Importantly, none of these cases involved nonresidents, but the claims of New York residents who had moved from one county to another. Although these plaintiffs also faced the absolute bar of section 186, and similarly did not fall within the special exceptions of section 187 (*see* note 4 *supra*), the claims of those who have been and continue to be New York residents may present problems different from those posed by nonresidents. Interestingly, the only case to consider the exact issue raised in this case also found section 186 unconstitutional as applied. *Avrutick v. Wilson*, 382 F.Supp. 984 (S.D.N.Y.1974), *vacated by stipulation*, Dkt. No. 74-2432 (2d Cir. August 12, 1975). Even were the three cases the state cites indistinguishable from the case at bar, this Court would not hestitate to grant plaintiff the relief she seeks absent an authoritative declaration of a higher court.

23. 490 F.2d 387, 399–400 (2d Cir. 1973).

24. *Cf. Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). *But cf. Super Tire Eng. Co. v. McCorkle*, 416 U.S. 115, 126, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), and cases cited therein.

The vigor with which plaintiff's counsel has litigated this and other actions attacking the constitutionality of sections 186 and 187 gives full assurance that the interests of the class will be adequately protected.

Motion for class action determination is granted. A declaratory judgment may be entered declaring sections 186 and 187 unconstitutional as applied to plaintiff and the class members.