■ In the Matter of PETER M. RIVERA et al., Respondents, v PEDRO ESPADA, JR., Appellant, and SENATE OF THE STATE OF NEW YORK et al., Intervenors-Appellants, et al., Respondents. [747 NYS2d 1]

Carl Heastie, on behalf of the Bronx Democratic Party,

determined, after a hearing, that respondent Espada, a member of the State Senate, is not in sympathy with the principles of the Democratic Party, based upon Espada's change of his membership from the Senate Minority (i.e., Democratic) Conference to the Senate Majority (i.e., Republican) Conference, as well as Espada's statements to the media explaining that action. Supreme Court granted petitioners' ensuing application for an order directing the Board of Elections to cancel Espada's enrollment in the Democratic Party pursuant to Election Law § 16-110 (2). We now reverse.

Section 11 of article III of the New York Constitution (the Speech or Debate Clause) provides: "For any speech or debate in either house of the legislature, the members shall not be questioned in any other place." This provision affords Espada immunity from any proceeding challenging any lawful action taken in his official capacity as a Senator (*see e.g. Campaign for Fiscal Equity v State of New York*, 265 AD2d 277; *Oates v Marino*, 106 AD2d 289, 290). Espada's change of affiliation from the Senate Minority Conference to the Senate Majority Conference, and his subsequent participation in the work of the Majority Conference, all constituting legislative acts, were the crux of the determination that he was out of sympathy with the Democratic Party's principles, and the petition therefore must be denied pursuant to the Speech or Debate Clause. Although the determination against Espada was also based on statements he made to the media, which do not generally enjoy such immunity (*see Hutchinson v Proxmire*, 443 US 111 [applying the parallel provision of the Federal Constitution]), the record on which the judgment appealed from was made is riddled with evidence of privileged legislative activity, improperly received at the hearing, so as to taint the judgment in its entirety.

Even if reversal were not required on the foregoing ground, we would reach the same result on the ground that it does not appear from the record that Mr. Heastie's determination is just, as Election Law § 16-110 (2) requires for the issuance of an order directing the cancellation of a voter's party enrollment. The statements and acts by Espada that petitioners adduce reflect dissatisfaction with the current political leadership in the Bronx, which does not constitute grounds for expulsion (*see Matter of Greenberg v Cohen*, 173 Misc 405), rather than any repudiation of the substantive principles espoused by the Democratic Party. Moreover, while not by itself determinative, Espada never actually changed his party enrollment. Significantly, in view of Espada's history as a Democratic elected of-

ficial, he cannot be equated to an outsider who changes his party enrollment for the ulterior purpose of neutralizing his new party as an adversary of his old party (*cf. Matter of Zuckman v Donahue*, 274 App Div 216, *affd* 298 NY 627; *Matter of Mendelsohn v Walpin*, 197 Misc 993, *affd* 277 App Div 947, *affd* 301 NY 670), which is the problem the statute was intended to address. We see no reason to extend the scope of the statute beyond its traditional role as a bar to such attempts to "raid" an opposing political party. Concur—Buckley, Friedman and Marlow, JJ.

Saxe, J.P., and Gonzalez, J., dissent in a memorandum by Saxe, J.P., as follows: I respectfully dissent. I would affirm the order canceling Mr. Espada's enrollment in the Democratic Party, inasmuch as the evidence properly supported the conclusion that Mr. Espada, by his conduct, demonstrated that he was no longer in sympathy with the principles of the Democratic Party.

As has been repeated regularly over the years, "the conception or notion that a person has a right to enroll in any party which he sees fit * * * is a mistaken one. There are limitations on the right to enroll [in a political party] which do not exist with reference to voting at a general election" (*Matter of Mendelsohn v Walpin*, 197 Misc 993, 995 [*affd* 277 App Div 947, *affd* 301 NY 670], quoting *Matter of Zuckman v Donohue*, 191 Misc 399, 407). "A condition of membership in a political party is the sympathy with its principles and the purpose of fostering and effectuating them" (*Mendelsohn* at 995, quoting *Zuckman* at 407, quoting *Matter of Werbel v Gernstein*, 191 Misc 275, 277). Political parties may limit membership to those who share the interests and persuasions underlying the party's existence (*see, California Democratic Party v Jones*, 530 US 567, 575; *Eu v San Francisco County Democratic Cent. Comm.*, 489 US 214, 222; *Tashjian v Republican Party of Conn.*, 479 US 208), and may therefore expel, by proper procedures, members who are not in sympathy with the party's interests and persuasions. This in no way affects a citizen's exercise of the constitutional right to vote in the general election.

In enacting Election Law § 16-110 (2), the New York State Legislature recognized and codified the right of a political party to cancel the membership of those not in sympathy with its principles. Because that right of a political party is acknowledged, the inquiry is one of fact, namely, the question of where, on the spectrum of behavior, the conduct and statements of the challenged individual fall. On one side of the spectrum are those acts by which a party member must be able, without risk

of expulsion, to express views contrary to those held by party leadership, or support the candidacy of a member of another party (*see, Matter of Greenberg v Cohen*, 173 Misc 405), or support legislation proposed by the other party.

On the other end of the spectrum, there are clearly forms of conduct that rise to the level at which they are contrary to the core principles of that party, in which event the party is entitled to obtain cancellation of the member's enrollment (*see, e.g., Matter of McAuliffe v Senn*, 97 AD2d 745). Although some cases have focused on improper attempts to "raid" political parties (*see, e.g., Matter of Zuckman v Donahue*, 274 App Div 216), there is no reason to limit the application of Election Law § 16-110 to such narrow circumstances.

In *Matter of Mendelsohn v Walpin*, the court took particular note that the candidate, while a member of the Liberal Party, had actively opposed Democratic candidates, and had only switched allegiances after being defeated as a Liberal Party candidate for the State Assembly. Moreover, it was found that even when he switched his enrollment to the Democratic Party, he intended to oppose the Democratic candidates. Similarly, Mr. Espada, in his statements and conduct, made it abundantly clear that his sympathies were not consistent with the principles of the Democratic Party.

Nor should Mr. Espada's conduct and statements be characterized as "legislative activities" entitled to Speech or Debate Clause immunity (NY Const, art III, § 11).

The majority, without citation to any legal authority, erroneously relies on a "tainted record" theory to find a Speech or Debate Clause violation and ignores the clear evidence in the record of Senator Espada's statements of disaffiliation and rejection of his party to the media.

The statements along with his other political acts stand for what they are—acts that are inimical to the interests of his party and not in sympathy with the party that provided him with the banner under which he was elected.