In the Matter of Ernest Greenwood, Petitioner, against Thomas J. Curran, as Secretary of State of the State of New York, et al., Respondents.

Supreme Court, Special Term, Queens County, October 3, 1952.

494

*Milton H. Reuben* and *Stanley Fowler* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Irving L. Rollins* of counsel), for Thomas J. Curran, as Secretary of State, respondent.

*Bouvier Beale* and *Atwood C. Wolf* for Edgar D. Hogland, respondent.

PETTE, J. Petitioner filed with the Secretary of State an independent nominating petition purporting to nominate him as the candidate of the Independent Efficiency Party for the

office of member of Congress of the United States for the First Congressional District of the State of New York at the general election to be held on November 4, 1952. Objections filed by the respondent Hogland, later supplemented by specifications, included in part the claim that the said nominating petition " failed to contain not less than three thousand (3,000) signatures and, therefore, under the provisions of the Election Law for the filling of an office by voters in more than one county, the said Nominating Petition was insufficient and should be treated as null and void." The Secretary of State rejected and invalidated said petition " holding that where a Congressional District involved consists of more than one county, as is the case in the First Congressional District of New York, same embracing a small part of Nassau County in addition to all of Suffolk County, that a minimum of three thousand (3,000) signatures is required for a valid nominating petition."

By order to show cause dated September 19, 1952, directed to the Secretary of State and to the objector Hogland, petitioner instituted a proceeding, pursuant to section 330 of the Election Law, to declare valid the aforesaid independent nominating petition, revoke the ruling with respect thereto made by the Secretary of State and restraining him from proceeding in accordance therewith and to adjudge that the objections filed by the respondent Hogland were null and void " for the reason that the same were not timely filed according to the statute; and upon the further ground that the said Edgar Day Hogland is not an aggrieved or otherwise qualified person to file objections ".

By separate notices of motion dated September 25, 1952, each of the respondents moved to dismiss the petition for legal insufficiency, the Secretary of State contending additionally that " on the contrary, said petition shows that the acts of said respondent Thomas J. Curran, complained of, are in all respects in accordance with law ".

Upon the argument of these applications, the attorneys for the respective parties agreed, without conceding the genuineness or validity of any signature, that the independent nominating petition involved herein contained 2,012 signatures. This concession was made solely for the purpose of determining the one issue as to the correctness of the ruling made by the Secretary of State with respect to the minimum number of signatures required by law to constitute a valid independent nominating petition for the office in question.

Inasmuch as said independent nominating petition is before the court by reason of the application made by the candidate himself, the order to show cause of which specifically directed the production thereof upon the hearing, together with the objections thereto including the specifications, it is unnecessary to pass upon the qualifications of the objector as a person aggrieved. As observed by the Court of Appeals in *Matter of Orange* (272 N. Y. 61, 66): '' The requirements of justice, however, do not permit a court to find that a petition is legal when it lacks the legal number of signatures.'' See, also, *Matter of Vona* v. *Cohen* (150 Misc. 649, affd. 240 App. Div. 827, affd. 262 N. Y. 706).

The determination of the question presented here turns upon the construction of subdivision 4 of section 138 of the Election Law which governs independent nominations. So far as pertinent here, said subdivision provides: '' Such a petition for the nomination of candidates for an office to be filled by the voters of any other political unit must be signed by voters numbering seven per centum of the total number of votes cast for governor at the last gubernatorial election in such unit, excluding blank and void votes; but not more than three thousand signatures shall be required upon any such petition for any office to be filled in any political subdivision of the state, and not more than one thousand five hundred signatures shall be required upon any such petition for any office to be filled in any county or portion thereof, provided, however, that for the following public offices in the city of New York the number of signatures need not exceed the following limits: for any office to be filled by all the voters of the city, seven thousand five hundred signatures; for any office to be filled by all the voters of any county or borough, five thousand signatures; for any office to be filled by all the voters of any municipal court district, or of any congressional or senatorial district, three thousand signatures; for any office to be filled by all the voters of any assembly district one thousand five hundred signatures. *For any office to be filled by the voters of a political subdivision containing more than one county not to exceed the aggregate of the signatures required for either of the counties so contained.*'' (Emphasis supplied.)

Petitioner contends that a liberal interpretation of the phrase '' not to exceed the aggregate of the signatures required for either of the counties so contained '' would render the petition herein valid since 1,500 signatures would suffice. Assuming

the applicability of this phrase to the case at bar, the court is of the opinion that 3,000 rather than 1,500 signatures were necessary to constitute a valid independent nominating petition. Compare Opinion of the Attorney-General rendered to the Secretary of State on August 2, 1946, construing subdivision 4 of former section 137 of the Election Law (1946 Atty. Gen. 308).

The First Congressional District is composed of the entire county of Suffolk and of part of the county of Nassau. According to the Legislative Manual of the State of New York for the year 1951, the contents of which the court may take judicial notice (see *Matter of Mendelsohn* v. *Walpin,* 197 Misc. 993, 995, affd. 277 App. Div. 947, affd. 301 N. Y. 670), the total number of votes cast in Nassau County for Governor at the last gubernatorial election held on November 7, 1950, excluding blank and void votes, was 257,689 of which it was conceded on the argument, at least 50,000 were in the First Congressional District. The total number of votes cast in Suffolk County at that election, excluding blank and void votes, was 101,629. Seven per cent of the pertinent votes cast in Nassau County amounted to over 3,500 and 7% of the votes cast in Suffolk County was 7,114. Since the total of these two figures exceeded the maximum signature requirement of 3,000 set forth in the statute, it is apparent that that number of signatures was the minimum required for a valid independent nominating petition for the office of member of Congress in the First Congressional District. Otherwise, in the several Congressional Districts of the State which embrace two or more counties, an independent petition to nominate a representative in Congress would be valid by filing a petition containing merely the number of signatures required to fill a county office in the smallest of such counties. Thus more signatures would be required for a local county office than for that of a representative in Congress, a situation which the court believes could not have been intended by the Legislature.

The court is convinced, however, that the clause of the statute emphasized above is applicable only to offices in the city of New York. This conclusion is reached for the following reasons: (1) The quoted language itself is only a clause, not a complete sentence. Although it begins with a capital letter and a period mark immediately preceding it would seem, from a typographical point of view, to terminate the language preceding it, nevertheless it contains no verb. Its sense, therefore, is incomplete. (2) This clause is similar in construction to the four clauses immediately preceding it, all of which begin with

the words " for any office ". The only difference is in the typography. As noted above, the typesetter commenced this particular clause with a capital letter and ended the clause immediately preceding it with a period instead of a semicolon, as was used after the first three clauses. (3) To construe this clause otherwise than as a limitation applicable only to the City of New York would create a direct conflict with other language in the sentence immediately preceding it which covers the same subject generally and which this court believes to be controlling. Under this construction, a petition other than for a State-wide or village office must contain signatures numbering 7% of the total number of votes cast for Governor at the last gubernatorial election in the political unit involved, except that the petition need not contain more than 3,000 signatures in any event and need not contain more than 1,500 signatures if the office is wholly within one county or a portion thereof. This last limitation is also inapplicable here since the First Congressional District is not wholly within one county.

It follows that the petition must be dismissed. No costs. Submit order.