In the Matter of DAVID H. JAQUITH et al., on Behalf of Themselves and All Other Qualified Voters of the State of New York Similarly Situated, Petitioners, *v.* CAROLINE SIMON, as Secretary of State of the State of New York, Respondent.

Supreme Court, Special Term, Albany County, August 17, 1962.

*James J. Leff* for petitioners. *Louis J. Lefkowitz, Attorney-General (Herbert H. Smith* of counsel), for respondent.

LAWRENCE H. COOKE, J.   In this proceeding instituted under article 78 of the Civil Practice Act, petitioners, alleging to be qualified voters registered at the last preceding general election from various respective addresses within the State and suing '' on behalf of themselves and all other qualified voters of the State of New York similarly situated '', seek a mandamus order directing '' (1) that the respondent Secretary of State obey the command of the provisions of the United States Constitution and the Constitution of the State of New York and accept for filing as presumptively valid, as provided by § 103 of the Election Law, independent nominating petitions nominating candidates for offices to be voted for by all the voters of the State any petition which may be filed with said respondent during the period prescribed by law for such filing when such independent nominating petitions are in proper form and appear to bear the requisite number of signatures, authenticated as prescribed in the Election Law of the State of New York without regard to the additional requirement that such petitions shall be signed by voters of whom at least 50 shall reside in each county of the State, the Counties of Fulton and Hamilton to be regarded as one county; and (2) that no independent nominating petition for statewide office duly filed in the Office of the respondent Secretary of State, to which objections and specifications may be filed pursuant to Section 145 of the Election Law, if otherwise valid, be declared invalid by the respondent Secretary of State solely upon the ground it does not contain the signatures of at least 50 voters residing in each county of the State, the Counties of Fulton and Hamilton to be considered as one county.''

It is alleged in the petition, in substance and among other things: that the respondent Secretary of State, pursuant to the duty imposed upon her under section 82 of the Election Law, caused to be printed and distributed at public expense a volume of the Election Law for 1962 including a political calendar and a summary of the provisions relating to the requirements for independent nominating petitions for State-wide offices; that in 1954 paragraph (a) of subdivision 5 of section 138 of the Election Law was enacted into law; that said paragraph of said subdivision of said section violates certain stated portions of the State

Constitution and that of the United States, including the equal protection clause of the Fourteenth Amendment of the United States Constitution; that petitioners are members of the Conservative Party, Inc., a membership corporation and a political committee within the meaning of article 13 of the Election Law of the State of New York; that petitioners with others and the Conservative party have engaged in certain political activities toward the nomination of candidates for offices to be voted for by all the voters of the State at the general election to be held on November 6, 1962; that petitioners and others have printed independent nominating petitions of the Conservative party which they propose to circulate and sign for the purpose of nominating certain named persons (which prospective candidates are among the petitioners herein (for the offices of Governor, Lieutenant Governor, Comptroller, Attorney-General and United States Senator at said election; that the requirement of paragraph (a) of subdivision 5 of section 138 of the Election Law that such petition be signed by at least 50 voters in each of the counties of the State is an arbitrary, unreasonable and unconstitutional interference with and infringement of the right to circulate said petition; and that respondent has acted in a manner to serve notice that she has acted to enforce and intends to enforce the provisions of such unconstitutional statute and that any petitions which will be filed by any person seeking to make a nomination to State-wide office will be rejected if they do not have the signatures of at least 50 voters in each of the counties of the State, Fulton and Hamilton being considered as one.

With her answer, respondent submits certain objections in point of law, among others, that the proceeding is premature in that a nominating petition cannot be signed or filed by anyone until after the return date of the order to show cause herein and that the petitioners are not aggrieved in that it is not alleged that there will be less than 50 signatures from any county, considering Fulton and Hamilton as one, on the proposed nominating petition when filed. Respondent's memorandum of law poses the question as to whether an article 78 proceeding in the nature of mandamus is a proper one.

Generally, mandamus will lie only to remedy a wrong that has been suffered and not to prevent an anticipated wrong (*Matter of Rooney*, 26 Misc. 73, 74; *Matter of Brown*, 14 N. Y. S. 450, 451–452; 22 Carmody-Wait, New York Practice, p. 212) and an application in the nature of mandamus is premature where sufficient time remains for performance, within the terms of the

applicable statute, of the duty sought to be compelled (*Matter of Eldred* v. *Monaghan,* 6 Misc 2d 658; *Matter of Liebman* v. *Van Denburg,* 168 Misc. 155, 156–157; *People ex rel. Smither* v. *Richmond,* 5 Misc. 26, 35; Civ. Prac. Act, § 1285, subd. 3; 22 Carmody-Wait, New York Practice, p. 381). However, the decision in *People ex rel. Hotchkiss* v. *Smith* (206 N. Y. 231), points out an exception to these general rules. There, petitioner sought a writ of mandamus directing defendants, composing the Board of Elections of Putnam County, to disregard as unconstitutional and void certain provisions of the Election Law in regard to independent nominations. Defendants insisted that the proceeding was premature and that the court had no jurisdiction to entertain the proceeding until a certificate for an independent nomination had been presented to them for filing and they, as a board, had refused to file it. The court rejected said contention and stated (p. 241): " The courts have not infrequently condemned efforts by persons to obtain from them decisions upon abstract and academic questions. Ordinarily the courts will not assume jurisdiction to decide questions in advance of some action taken or refused actually involving the rights of persons interested in the question sought to be determined. Where private interests only are involved the propriety of refusing such jurisdiction cannot be reasonably denied. If a question presented in an action or proceeding relates to the duties of public officers in matters of a public nature the same reason for a refusal to take jurisdiction does not always exist. In this case a refusal to entertain the proceeding might and probably would result in the failure of the action of the court being of any practical avail. It appears that the organization represented by the petitioners has not been in existence a sufficient length of time to enable it to have a standing as a party organization within the terms of the statute. The organization intends to make independent nominations and one of the defendants has stated that the election board will comply with the terms of the amendments to the Election Law made in 1911. *If this proceeding is not entertained it may result in preventing such independent nominations. The situation is exceptional and extraordinary.* The proceeding should be entertained, although it is not intended as a precedent in cases between individuals as such or in any case except where the facts and circumstances are equally exceptional and extraordinary. (See the action of this court in *Matter of Hopper* v. *Britt,* 203 N. Y. 144; *Matter of Hopper* v. *Britt,* 204 N. Y. 524, and also the court in *State ex rel. Morris* v. *Wrightson,* 56 N. J. L. 126.) " (Emphasis supplied.) Here the situation is similar in

this regard and likewise exceptional and extraordinary. (See, also, *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 412; *Childs* v. *Cohen*, 65 N. Y. S. 2d 75.)

Is mandamus under article 78 an appropriate remedy? In *Matter of Diocese of Rochester* v. *Planning Bd. of Town of Brighton* (1 N Y 2d 508, 519–520) it was held: '' It is a general rule that a party cannot, in the same proceeding, rely upon a statute or retain benefits thereunder and attack its constitutionality (*Fahey* v. *Mallonee*, 332 U. S. 245; *Buck* v. *Kuykendall*, 267 U. S. 307; *Shepherd* v. *Mount Vernon Trust Co.*, 269 N. Y. 234). The proper way to raise the constitutional question is by way of a separate action or proceeding (*Baddour* v. *City of Long Beach*, 279 N. Y. 167, motion for reargument denied 279 N. Y. 794, appeal dismissed 308 U. S. 503; *Matter of Romig* v. *Weld*, 276 App. Div. 514, 517), and we are advised that such an independent action is now pending.'' It is noted that the Court of Appeals cited *Matter of Romig* v. *Weld* (276 App. Div. 514, 517) at which latter page the Appellate Division stated:

'' We feel that he cannot in this proceeding seek to declare invalid and unconstitutional the ordinance under which he sought relief.

'' We think his remedy, if any, is by a proceeding under article 78 of the Civil Practice Act, in the nature of mandamus or by an action for a declaratory judgment. (*Dowsey* v. *Kensington*, 257 N. Y. 221; *Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222; 10 Carmody on New York Practice, pp. 355–356.) ''

Furthermore, in view of the importance herein of an ultimate authoritative determination which is timely, the court does not '' pause to consider whether the question is presented in appropriate proceedings '' and should disregard purely technical objections and resolve the main and basic questions raised by the petition, for in the last analysis the matter is of such public interest that sooner or later it must be decided and the court will not avoid responsibility in this regard (*Matter of Kuhn* v. *Curran*, 294 N. Y. 207, 213; *Matter of Little* v. *Young*, 274 App. Div. 1005, affd. 299 N. Y. 699).

The basic question here concerns the constitutionality of paragraph (a) of subdivision 5 of section 138 of the Election Law which provides: '' An independent nominating petition for candidates to be voted for by all the voters of the state must be signed by at least twelve thousand voters, of whom at least fifty shall reside in each county of the state, the counties of Fulton and Hamilton to be considered as one county.''

We must approach the determination of that question with the clear and settled legal principles in mind that a legislative enact-

ment carries with it a strong presumption of constitutionality, that while this presumption is rebuttable unconstitutionality must be demonstrated beyond a reasonable doubt, the party alleging unconstitutionality having a " heavy " burden, and that only as a last resort will the courts strike down legislative enactments on the ground of unconstitutionality (*Gitlow* v. *New York,* 268 U. S. 652, 668; *People* v. *Finkelstein,* 9 N Y 2d 342, 344–345; *Matter of Roosevelt Raceway* v. *Monaghan,* 9 N Y 2d 293, 303; *National Psychological Assn.* v. *University of State of N. Y.,* 8 N Y 2d 197, 202; *Wiggins* v. *Town of Somers,* 4 N Y 2d 215, 218–219; *Lincoln Bldg. Associates* v. *Barr,* 1 N Y 2d 413, 415, 418; *Easley* v. *New York State State Thruway Auth.,* 1 N Y 2d 374, 379; *Knapp* v. *Fasbender,* 1 N Y 2d 212, 232–233; *Farring-ton* v. *Pinckney,* 1 N Y 2d 74, 78; *Matter of Ahern* v. *South Buffalo Ry. Co.,* 303 N. Y. 545, 555, affd. 344 U. S. 367). Nor may courts substitute their judgment for that of the Legislature as to the wisdom or expediency of the legislation for to do so would transcend the limits of the pertinent field of inquiry (*Beau-harnais* v. *Illinois,* 343 U. S. 250, 262; *Communications Assn.* v. *Douds,* 339 U. S. 382, 400–401; *National Psychological Assn.* v. *University of State of N. Y.,* 8 N Y 2d 197, 203; *Lincoln Bldg. Associates* v. *Barr,* 1 N Y 2d 413, 415–416; *Knapp* v. *Fasbender,* 1 N Y 2d 212, 233; *Thompson* v. *Wallin,* 301 N. Y. 476, 488, affd. *sub nom. Adler* v. *Board of Educ. of City of N. Y.,* 342 U. S. 485, 801, 951).

Turning for guidance to the decisions of the United States Supreme Court, we come to the decision in *MacDougall* v. *Green* (335 U. S. 281). There, the validity of an Illinois statute requiring that a petition to form and nominate State-wide candidates for a new political party to be signed by at least 25,000 qualified voters, including at least 200 from each of at least 50 of the 102 counties in that State, was challenged. At page 283, it was stated: " It is allowable State policy to require that candidates for state-wide office should have support not limited to a concentrated locality. This is not a unique policy. See New York Laws 1896, c. 909, § 57, now N. Y. Elec. Law § 137 (4); 113 Laws of Ohio 349, Gen. Code § 4785–91 (1929), now Ohio Code Ann. (Cum. Supp. 1947) § 4785–91; Mass. Acts, 1943, c. 334, § 2, now Mass. Ann. Laws c. 53, § 6 (1945)." It should be pointed out that chapter 909 of the New York Laws of 1896 and subdivision 4 of section 137 of the Election Law of the State of New York, as so referred to, required that independent nominating petitions for State-wide offices be signed by 6,000 and 12,000 voters, respectively, of whom (in each instance) at least 50 shall reside in each county of the State, Fulton and Hamilton to be considered as one

county.  The Supreme Court went on to declare (p. 284):  "It would be strange indeed, and doctrinaire, for this Court, applying such broad constitutional concepts as due process and equal protection of the laws, to deny a State the power to assure a proper diffusion of political initiative as between its thinly populated counties and those having concentrated masses, in view of the fact that the latter have practical opportunities for exerting their political weight at the polls not available to the former. The Constitution — a practical instrument of government — makes no such demands on the States.  *Colegrove* v. *Green,* 328 U. S. 549, and *Colegrove* v. *Barrett,* 330 U. S. 804."  It should be pointed out that under the Illinois legislative enactment 39% of the signatures were required to be distributed (p. 283) while, here, approximately 25% are so required.

Attention has been called to the 1962 decision in *Baker* v. *Carr* (369 U. S. 186), a case involving a Tennessee apportionment statute.  There, Justice DOUGLAS stated (pp. 244–245):

"And so the question is, may a State weight the vote of one county or one district more heavily than it weights the vote in another?

"The traditional test under the Equal Protection Clause has been whether a State has made ' an invidious discrimination,' as it does when it selects ' a particular race or nationality for oppressive treatment.'  See *Skinner* v. *Oklahoma,* 316 U. S. 535, 541.  Universal equality is not the test; there is room for weighting.  As we stated in *Williamson* v. *Lee Optical Co.,* 348 U. S. 483, 489, ' The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.' "

Justice CLARK said he took the law of the case from *MacDougall* v. *Green* (*supra*) and held (p. 253):  " a ' statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'  *McGowan* v. *Maryland,* 366 U. S. 420, 426 (1961)."

Justice STEWART, also concurring, declared (pp. 265–266):

"In *MacDougall* v. *Green,* 335 U. S. 281, the Court held that the Equal Protection Clause does not ' deny a State the power to assure a proper diffusion of political initiative as between its thinly populated counties and those having concentrated masses, in view of the fact that the latter have practical opportunities for exerting their political weight at the polls not available to the former.' 335 U. S., at 284.  In case after case arising under the Equal Protection Clause the Court has said what it said again only last Term — that ' the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others,' *McGowan*

v. *Maryland*, 366 U. S. 420, 425. In case after case arising under that Clause we have also said that ' the burden of establishing the unconstitutionality of a statute rests on him who assails it.' *Metropolitan Casualty Ins. Co.* v. *Brownell*, 294 U. S. 580, 584.

" Today's decision does not turn its back on these settled precedents."

Further support for the constitutionality of the attacked statute may be found in the decisional law of this State. In *Matter of Davis* v. *Board of Elections of City of N. Y.* (14 Misc 2d 494) although dealing more particularly with subdivision 6 of section 138 of the Election Law, Special Term stated (p. 495): " Section 138 of the Election Law is a reasonable statutory regulation of election procedure in its provision for nominations by independent petition. It is not discriminatory and in no sense arbitrary. It does not violate section 8 of article II of the State Constitution." The decision was affirmed by the Appellate Division (6 A D 2d 390) with a holding that the requirement that the signer of an independent nominating petition must have been registered at the time of the last preceding general election as a qualified voter was not an unreasonable one (pp. 391–392). The Court of Appeals also affirmed (5 N Y 2d 66, 69) and stated: " As this court said in *Matter of Burke* v. *Terry* [203 N. Y. 293, 295]: ' The franchise of which no " member of this state " may be deprived is not only the right of citizens who possess the constitutional qualifications to vote for public officers at general and special elections, but it also includes the right to participate in the several methods established by law for the selection of candidates to be voted for '. *But the exercise of these correlative rights is subject, in the manner of their exercise, to the plenary power of the Legislature to promulgate reasonable regulations for the conduct of elections (People ex rel. Hotchkiss* v. *Smith,* 206 N. Y. 231, 242; *Matter of Burke* v. *Terry, supra,* pp. 295–296)." (Emphasis supplied.) In *Matter of McManus* v. *DeSapio* (13 Misc 2d 513, affd. 7 A D 2d 613, affd. 5 N Y 2d 773) and in *Matter of Goldwater* v. *Simon* (24 Misc 2d 430, affd. 11 A D 2d 1078, affd. 8 N Y 2d 1062) subdivision 5 of said section 138 was discussed and applied but no ruling on the constitutionality of said subdivision was made.

In *Matter of O'Rourke* v. *Cohen* (265 N. Y. 318) a statutory provision requiring 1,500 signatures on an independent nominating petition for congressional, senatorial and assembly districts within the City of New York and a 3,000 minimum for similar districts outside of the said city was held not to be unconstitutional. The Court of Appeals observed (p. 323): " The districts outside the city take in, many times, other counties, and in other

particulars differ from the situation in big cities. Besides the whole matter is subject to regulation by the Legislature as long as there is nothing unreasonable in the measures provided or they do not deprive any one of the right to vote. (*People ex rel. Woodruff* v. *Britt,* 260 N. Y. 246; *People* v. *Havnor,* 149 N. Y. 195.) '' In *Greenwood* v. *Curran* (202 Misc. 493, affd. 280 App. Div 947) a provision of the Election Law was construed so as to provide that an independent nominating petition other than for a State-wide or village office must contain signatures numbering 7% of the total number of votes cast for Governor at the last gubernatorial election in the political unit involved, except that the petition need not contain more than 3,000 signatures in any event and not more than 1,500 signatures if the office is wholly within one county or a portion thereof. In *Matter of Young* v. *Heffernan* (187 Misc. 604, affd. 296 N. Y. 697) significantly, the validity of a law providing for differences in the requirements for nominations by independents and those by enrolled members of political parties was upheld. Special Term stated (pp. 605–606): '' The State Constitution, as construed by the Court of Appeals, gives to all electors ' equality of opportunity so far as practicable for the nomination of candidates for public office ' (*People ex rel. Hotchkiss* v. *Smith,* 206 N. Y. 231, 241–242). That does not mean that the Legislature may not make reasonable differences in requirements for nominations by enrolled members of political parties, as distinguished from nominations by independents.'' (See, also, *Matter of Orsini* v. *Heffernan,* 187 Misc. 730, affd. 296 N. Y. 698, 296 N. Y. 699; 18 N. Y. Jur., p. 272.)

While all electors should have equality of opportunity so far as practicable for the nomination of candidates for public office, the matter of independent nominations is subject to reasonable regulation by the Legislature. The courts should not interfere with this reasonable regulation unless it results in '' invidious discrimination '' or unless it be deprivative of the right to vote. This does not mean that the Legislature may not make reasonable differences in requirements for nominations by enrolled members of political parties as distinguished from nominations by independents. It is allowable State policy to require that candidates for State-wide offices should have support not limited to a concentrated locality. In considering invidious discrimination, universal equality is not the test for '' there is room for weighting '' and a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

Here, following a legislative pattern of 66 years, paragraph (a) of subdivision 5 of section 138 of the Election Law requires that an independent nominating petition for candidates to be

voted for by all the voters of the State must be signed by at least 12,000 voters, of whom at least 50 shall reside in each county of the State, Fulton and Hamilton to be considered as one county. No demand is exacted that the 12,000 signatures be divided equally throughout the counties. The requisite distribution applies to but approximately one quarter of the minimum total. The requirement of 50 signatures per county is a small number indeed and represents a very small percentage when applied to the total vote of any county. It is nothing less than reasonable to have a legislative plan which guards against an unwieldy or unreasonable number of candidates and against a confusing ballot for the electorate, by providing that State-wide candidates have some semblance of support throughout the State, even though the extent of such requirement be, as here, relatively insignificant. The statutory scheme appears to be rational and a reasonable attempt " to assure a proper diffusion of political initiative " and should not be set aside where such a state of facts reasonably may be conceived to justify it. Petition dismissed.